[No. 34191. Department Two. March 13, 1958.]

THE STATE OF WASHINGTON, *Respondent*, v. RUDY SCHULZE, *Appellant*.[1]

'Reported in 322 P. (2d) 839.

*Roehl & Dalquest* and *John T. Slater*, for appellant.

*Lee J. Reynolds* and *Nathan G. Richardson*, for respondent.

*The Attorney General, Stephen M. Reilly, Assistant,* and *Harold M. Eastvold, Special Assistant, amici curiae.*

DONWORTH, J.—This is an appeal from a judgment and sentence, entered upon the verdict of a jury, which found appellant guilty of violating: (1) a certain regulation relating to the possession and transportation of petrale sole, allegedly adopted by the director of fisheries pursuant to RCW 75.08.080 and 75.08.090, and (2) the provisions of RCW 75.08.150 and 75.08.190 making it a gross misdemeanor to resist any fisheries inspector in the discharge of his duties.

The prosecuting attorney of Clallam county charged in the first count of an amended information:

"That he, the said RUDY SCHULZE, Defendant, in the County of Clallam, State of Washington, on or about the 12th (11th M. C.) day of February, 1956 while operating the fishing boat 'The Paul L', did wilfully, unlawfully have in his possession and while in his possession did transport for commercial purposes through and over the waters of District #1 in the State of Washington 33,330 pounds of petrale sole, the legal limit allowed per boat being 6,000 pounds as provided in Fisheries Department Order #256, Section 5, Sub-section E, contrary to the form, force and effect of the statutes in such case made and provided, and against the peace and dignity of the State of Washington."

Appellant, a commercial fisherman, was master of the "drag"—or bottom fishing—boat, "Paul L." At the time of his arrest at Neah Bay, on February 11, 1956, appellant had in his possession, as master of the "Paul L," a cargo of mixed fresh bottom fish exceeding 50,000 pounds, of which over 33,000 pounds consisted of petrale sole. It is undisputed that all of these fish were taken from certain fishing grounds on the high seas known as the "Esteban Deep," which is located off the west coast of Vancouver Island, approximately sixty miles distant from the nearest point of land in the state of Washington. While aboard the "Paul L," and

in the possession of appellant, the fish were transported for commercial purposes through the waters of district No. 1.

The second count of the amended information charged:

"That he, the said RUDY SCHULZE, Defendant, in the County of Clallam, State of Washington, on or about the 12th (11th M.C.) day of February, 1956 did wilfully and unlawfully resist, hinder, delay and obstruct the State Fisheries Department Inspectors Winfield Miller and Glen Corliss, Public Officers, in discharging their duties, contrary to the form, force and effect of the statutes in such case made and provided, and against the peace and dignity of the State of Washington."

Appellant's brief contains eleven assignments of error, the tenth of which is directed to the failure of the trial court to grant appellant's motion in arrest of judgment, made on the grounds that the facts alleged in the information did not constitute a crime or misdemeanor, and that there had been no proof of some essential element of the offenses for which appellant had been tried. Our conclusion on this issue renders unnecessary our consideration of the remaining assignments of error.

The first count of the amended information is based upon the administrative regulation of the director of the department of fisheries referred to therein.

█ It was incumbent upon respondent to prove the existence of that regulation because courts of this state do not take judicial notice thereof. *State v. Schmidt*, 128 Wash. 661, 223 Pac. 1057 (1924).

RCW 75.08.090 (which is part of the fisheries code) provides, in part:

"All rules and regulations of the director, . . . and all amendments to, or modifications . . . of existing rules and regulations shall be made and adopted by the director and shall be promulgated by publication in a newspaper of general circulation published at the state capital and shall take effect and be in force at the times specified therein."

The next section of the fisheries code, RCW 75.08.100, provides:

"Rules and regulations of the director shall be admitted as evidence in the courts of the state when accompanied by

an affidavit from the director or assistant director certifying that the rule or regulation has been lawfully adopted, promulgated, and published, and the affidavit shall be prima facie evidence of proper adoption, promulgation, and publication of the rule or regulation."

The state introduced in evidence, as exhibit 5, a booklet consisting of approximately one hundred mimeographed pages, entitled "General Order No. 256." Attached thereto is an affidavit of the director of fisheries, dated February 24, 1956. It reads, in part:

". . . That General Order No. 256, as amended, of the Department of Fisheries of the State of Washington, a true copy of which is hereto attached, marked Exhibit 'A' and incorporated herein and made a part of this affidavit by reference, has been lawfully adopted, promulgated and published by the Director of the Department of Fisheries, State of Washington, and that I hereby certify that said Order No. 256 was on the 2nd day of May, 1950, lawfully adopted, promulgated and published in the Daily Olympian, a legal newspaper of general circulation, published at the State Capital, to wit the City of Olympia, County of Thurston, State of Washington, all in accordance with the statutes of the State of Washington, and said Order, as amended, was in full force and effect on February 11, 1956."

Exhibit 5 was admitted in evidence without objection.

On page 12 of this booklet, under section 5, there appears subsection (e), which provides:

"It shall be unlawful to possess in or transport through the waters of District No. 1 for commercial purposes or land at any Washington state port any petrale sole taken from state waters, or from the waters of the Pacific Ocean, from February 1 through April 15; provided, that it shall be lawful to possess, transport or land incidental catches of petrale sole not exceeding 6,000 pounds per boat trip."

On the left margin of page 12, opposite subsection (e), there appears "1/19/56." It is contended by the state that this regulation was made, adopted and promulgated January 19, 1956. Hence, the purported regulation was less than a month old at the time of appellant's arrest.

At the close of the state's case, and again upon making his

post-trial motion in arrest of judgment, appellant urged that the regulation was not properly before the court, and therefore there was a failure to prove that the crime charged in count I of the amended information had been committed. Specifically, appellant's contention in the trial court and this court is that subsection (e) of section 5 of general order No. 256 has not been lawfully made, adopted, and promulgated, as provided in RCW 75.08.090.

Appellant argues, in support of this contention, that the affidavit of the director, appended to general order No. 256, § 5, is defective; that nowhere in the affidavit is it certified that subsection (e) (the amendment of January 19, 1956) was promulgated by publication, as required by RCW 75.08.090; and that the affidavit is not "prima facie evidence of proper adoption, promulgation, and publication." RCW 75.08.100.

It is no answer to this argument to say that this regulation must be held valid because it was admitted in evidence without objection. The affidavit of the director attached to the exhibit clearly shows on its face that the statements therein made regarding the adoption, promulgation, and publication of general order No. 256 on May 2, 1950, could not possibly apply to subsection (e) of § 5 thereof, which was an amendment adopted nearly six years after the publication of the original order No. 256.

Since subsection (e) of § 5 is an amendment adding a new provision to general order No. 256, publication thereof as prescribed in RCW 75.08.090 was a condition precedent to its becoming effective. The affidavit of the director fails to disclose that this amendment was *ever* promulgated by publication as required by the statute. It must therefore be held that this affidavit is not *prima facie* evidence of the lawful existence of subsection (e).

In the absence of proof of this vital prerequisite to the validity of this amendment to the rules and regulations (in the absence of which the acts alleged in count I are not criminal), we must hold that the state failed to prove an

essential element of the crime charged. Hence, appellant's conviction as to count I cannot be sustained.

With respect to count II, we assume, without deciding, that the allegations therein contained are sufficient to constitute an offense within the purview of RCW 75.08.190 (Laws of 1955, chapter 12, p. 22). See *State v. Moser*, 41 Wn. (2d) 29, 246 P. (2d) 1101 (1952). RCW 75.08.190 provides, in part:

"The director, and any fisheries inspector . . . shall have authority to arrest, without writ, order or process, *any person in the act of violating any of the provisions of this title, or any of the rules, regulations, or orders made by the director.*" (Italics ours.)

The record fails to reveal any valid rule, regulation, or order of the director which appellant could be deemed by the fisheries inspectors to have been in the act of violating at the time of his arrest. Since his arrest was unlawful, he was justified in resisting it. *State v. Rousseau*, 40 Wn. (2d) 92, 241 P. (2d) 447 (1952).

Since the state failed to prove an essential element of the two offenses charged, the trial court was in error in refusing to grant appellant's motion in arrest of judgment.

Accordingly, the judgment and sentence is reversed, and the cause remanded with directions to dismiss the action as to both counts.

HILL, C. J., ROSELLINI, FOSTER, and HUNTER, JJ., concur.