[No. 1020-2. Division Two. January 24, 1974.]

THE STATE OF WASHINGTON, *Appellant,* v. FORREST W. M. P. ROOK, *Respondent.*

*John C. Merkel, Prosecuting Attorney,* and *Warren K. Sharpe, Deputy,* for appellant.

*Forrest W. M. P. Rook,* pro se.

ARMSTRONG, J.—This is a filiation proceeding wherein trial was had to a jury. The jury concluded that the defendant, Forrest Rook, was not the father of the complaining witness' child. The trial court denied the state's post-trial motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The state's assignments of error raise three issues:

(1) Was it prejudicial error to admit in evidence a letter to defense counsel from the Veterans Administration Hospital? We hold that admission of the letter was a violation of the hearsay evidence rule, and the effect of that violation was prejudicial to the rights of the state.

(2) Did the court err in permitting defense counsel to ask the complaining witness whether she had ever been married and having received a negative answer, to then ask whether she had given birth to any other children? We hold that it was prejudicial error.

(3) Did the court err in denying the state's motion for judgment notwithstanding the verdict? We hold that it was proper to deny the motion because a jury issue had been established.

The mother of the infant in question met the defendant for the first time in November of 1970. In the summer of 1971 they began dating and they continued dating on weekends thereafter. On their fourth date, during the first week in October 1971, or the latter part of September, they engaged in sexual intercourse. Subsequent acts of sexual intercourse took place on October 22, 1971, October 29, 1971, and November 7 or 8, 1971. Neither party used contraceptive devices. Medical testimony established that the child was probably conceived between October 16 and October 30, 1971.

On November 15, 1971, the two parties were engaged to be married. Mr. Rook purchased a diamond engagement ring and a wedding ring for his betrothed. Mr. Rook does not deny the acts of sexual intercourse, but maintains that she denied him sexual relations after their engagement. The mother of the infant in question did not know she was pregnant at the time of the engagement.

Around Thanksgiving time it came to the attention of the mother of the child that the defendant had made derogatory remarks to her brother about her love-making ability.

She became angry, threw the rings at him and terminated their engagement.

By the first week in December, she had missed her menstrual cycle and for the first time learned of her pregnancy. On December 5, when confronted with this fact, the defendant did not deny that the child was his. On the contrary, he suggested that they become reengaged, and offered to return the rings to her. In their conversation his main concern was for the cost of the baby.

Defendant then consulted with his father. He did not deny to his father the possibility of his paternity. His father expressed his opinion that the girl was probably not pregnant and was endeavoring to trick him into marrying her. His father suggested he see a lawyer. He, instead, asked her to marry him. She refused. After that they stopped seeing each other.

The mother testified, and it is not directly refuted, that she did not engage in sexual relations with any other man during the time she was dating Mr. Rook. Mr. Rook did not have knowledge of any relationship between the mother and another man.

Mr. Rook's defense is that although he did have sexual relations with the mother, for medical reasons, he could not reach a climax. He states that he was taking the drug mellaril, prescribed to relieve anxieties and depressions, which inhibited his ability to father a child. Defendant testified that when he was a patient at the Veterans Administration Hospital he was taking mellaril and other drugs. He states he was taking mellaril while he was dating the mother of the child. The first date he claims to have complained of his sexual problems to a doctor was June 23, 1972, after his marriage to another woman.

The mother of the child testified that he gave every evidence of being able to complete the sex act. He told her she was "the greatest person he had ever slept with." On cross-examination, defendant admitted he had never told her about his lack of completion of performance. He said he

led her to believe he was having satisfactory sexual relations.

The general practitioner who delivered the baby was asked a hypothetical question by defendant's counsel relative to the effect of mellaril and similar drugs on sexual performance. The doctor stated that according to the *Physician's Desk Reference,* which is the book they use to check on composition and use of drugs and their possible side effects, "there is an instance that in some instances ejaculation is inhibited, diminished." The doctor also stated that there have been instances of conception occurring even with this inhibition.

Turning now from the facts to the law governing the issues, we shall first address the admission in evidence of a letter written by an employee of the Veterans Administration Hospital at American Lake. The letter was written on behalf of the Chief of the Medical Administration Division. There is nothing in the letter or the record to indicate the employment capacity of the writer or whether he was a doctor. We have set forth the contents of the letter in the footnote.[1]

The problem resulting in the admission of the hearsay letter was created because the psychologist and psychiatrist

---

[1]"Dear Mr. Simmons:

"Your letter to Dr. Stuen concerning Mr. Rook has been referred to this office for reply.

"Mr. Rook was admitted to the Veterans Administration Hospital in Seattle on April 7, 1971. He was committed to that hospital by the Superior Court of King County on April 27, 1971.

"The veteran was then transferred to this hospital from Seattle on June 23, 1971, and was treated for chronic emotional condition. He was released from here on October 14, 1971, and has returned periodically for outpatient visits. We furnished the committing court a certificate stating that Mr. Rook had improved sufficiently to lift the committment.

"During his stay in this hospital, phenothiazine type of medication was prescribed for Mr. Rook. He was tried on a number of different drugs, including stelazine, thorazine, prolixin and mellaril. Most of these drugs can, in *some* people, impair or even inhibit ejaculation. However, findings are not consistent. Some patients have reported better sexual functioning, probably due to the reduction of anxiety.

"Therefore, although impotency can occur with some psychotropic drugs, it is not a consistent find. We doubt that any physician would be

subpoenaed by the defense did not appear to testify. The defense suggested that the letter be used in place of their testimony. The trial court recognized that the letter was hearsay but permitted its use in evidence, over the state's objection, to avoid a continuance. The trial court stated that the letter, although hearsay, was not prejudicial because it merely repeated the opinions expressed by the state's own doctor—namely, that certain drugs which had been prescribed for defendant could impair or inhibit the defendant's ability to father a child.

Not only does the letter actually go further than the testimony previously presented, but its admission ignores the basic reasons for the rule prohibiting the use of hearsay testimony. The most important objection to hearsay evidence is that the opposition party is denied the right to cross-examine the witness under oath. If evidence is admitted in the nature of a letter it may disclose facts subject to challenge and it may disclose but a part of the necessary facts. The evidence which remains undeveloped may be of two types, (a) the remaining and qualifying circumstances of the subject of the evidence, as personally known to the witness, and (b) any facts which diminish the personal trustworthiness of the witness, or his qualifications to express an opinion. *See* 5 J. Wigmore, *Evidence* § 1368 (3d ed. 1940).

The letter does not reveal the qualifications of the writer to express an opinion about side effects of the drug mellaril. The letter reveals that the writer was relying to some extent on hearsay evidence. Even if the writer was qualified to express the opinions stated, careful cross-examination could have revealed a very slight possibility of the drug affecting satisfactory sexual performance.

---

able to dogmatically state that mellaril or any of the phenothiazine tranquilizers made it impossible for Mr. Rook to achieve ejaculation.

"Sincerely yours,
Herbert D. Houston
for THOMAS A. HOLTHAUS
Chief, Medical Administration Division"

The letter injects an atmosphere of sympathy for defendant's emotional condition while under treatment at the hospital. At the time of the trial defendant was receiving a 100 percent disability pension and vocational training as a stationary engineer. The letter could cast doubt on the testimony of the state's witnesses who indicated that the defendant appeared to be normal and sane. If a jury disbelieves a witness on one matter they may disbelieve him on other testimony.

Another prejudicial feature is that the letter refers to the defendant being treated with stelazine, thorazine, prolixin and mellaril. It states that "[m]ost of these drugs can, in *some* people, impair or even inhibit ejaculation." The state was denied the right to challenge numerous items mentioned in the letter, to clarify whether defendant was still taking all of the drugs mentioned and to learn whether the impressive array of psychotropic drugs administered could have had a holdover effect during the time of the courtship of the parties.

We recognize that the experienced and able trial court was faced with a difficult procedural problem and in the short time allowed the trial court, it could not consider all of the prejudicial effects which an appellate court can analyze after extensive research and consideration. We are convinced, however, that the rights of the state, the mother, and the child were prejudiced by the admission into evidence of the letter which the trial court and counsel for both sides recognized to be hearsay evidence.

Our next consideration is a question which has never been directly considered by our appellate courts—was it error to admit testimony that the mother had a prior illegitimate child? The trial court ruled that *State v. Ferguson*, 157 Wash. 19, 288 P. 239 (1930), was not in point. That case held that evidence tending to impeach the reputation of the mother for chastity or evidence showing sexual intercourse with other men in a time frame outside the possible period of conception of the child was not admissible. The Supreme

Court held that the only issue was whether defendant was the father of the child.

In ruling on the motion for a judgment notwithstanding the verdict or in the alternative for a new trial, the trial court stated:

> As for the evidence that the complaining witness had previously born an illegitimate child, the case of *State v. Ferguson,* 157 Wash. 19, is not in point. The evidence was admitted, not to show that someone else might have fathered the child, but simply as part of the overall situation of the complaining witness. Certainly it was material to inquire whether she was then married or had ever been married, and it was proper to ask whether she had previously born children. The amount of education she had received and the nature of her employment, past and present, were material. It certainly was proper for the State to show that she was presently employed and supporting her family, and it was equally proper to ask her for portions of her past history. Her concern for her prior illegitimate child could have influenced the jury in her favor or it might have the opposite effect. In any case, the evidence was material and certainly is not sufficient by itself, or in combination with other factors, to warrant a new trial.

 We cannot agree that evidence of the prior illegitimate child is either material or relevant in a filiation proceeding. The meaning of the terms materiality and relevance are considered in C. McCormick, *Law of Evidence* § 185 (2d ed. 1972):

> In the courtroom the terms relevancy and materiality are often used interchangeably, but materiality in its more precise meaning looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to prove a proposition which is not a matter in issue or probative of a matter in issue, the evidence is properly said to be immaterial. As to what is "in issue", that is, within the range of the litigated controversy, we look mainly to the pleadings, read in the light of the rules of pleading and controlled by the substantive law. . . .
>
> We begin, then, with the notion of materiality, the inclusion of certain questions or propositions within the

range of allowable proof in the lawsuit. Relevancy, in legal usage, embraces this test and something more. Relevancy in logic is the tendency of evidence to establish a proposition which it is offered to prove. Relevancy, as employed by judges and lawyers, however, is the tendency of the evidence to establish a material proposition. Thus, as James points out, "evidence may be excluded as 'irrelevant' for either of these two quite distinct reasons: because it is not probative of the proposition at which it is directed, or because that proposition is not provable in the case."

(Footnotes omitted.)

The Washington appellate courts have addressed the subject of relevancy and materiality on numerous occasions. A summary of Washington cases is contained in *State v. Whalon*, 1 Wn. App. 785, 791, 464 P.2d 730 (1970), wherein this court stated:

A trial court has discretion concerning the admissibility of evidence insofar as its relevance is concerned. The standard for relevancy is whether the evidence gives rise to reasonable inferences regarding contested matter or throws any light upon it. *State v. Schock*, 41 Wn.2d 572, 250 P.2d 516 (1952). Relevancy means a logical relation between evidence and the fact to be established. *Chase v. Beard*, 55 Wn.2d 58, 346 P.2d 315 (1959). Any evidence which tends to identify the accused as the guilty person is relevant. *State v. Spadoni*, 137 Wash. 684, 243 P. 854 (1926).

Any competent evidence which tends logically to prove a defendant's connection with a crime is material. Materiality is judged not only upon what the evidence shows standing alone, but also on whatever inferences may be drawn when it is viewed in connection with other evidence. Relevant and material evidence is admissible. Its cogency and the degree to which it elucidates facts in issue become matters of the weight given the evidence by the jury. *State v. Gersvold*, 66 Wn.2d 900, 406 P.2d 318 (1965).

The issue in this case may be simply stated: is the defendant the father of the child? Whether the mother of the child had a prior illegitimate child is not probative of that question. It does inject into the trial the issue of her prior

chastity many years before the birth of the child and thus it runs counter to the rule expressed in *State v. Ferguson, supra.*

We recognize that the trial court is allowed considerable leeway in allowing into evidence certain facts which do not bear directly upon the issue but merely furnish details which fill in the background of the case and give it interest, color and life-likeness. Such background material is helpful as a preliminary understanding of the case. C. McCormick, *Law of Evidence* § 185, *supra.*

In a filiation proceeding, evidence of prior sexual relations with other men at about the time the child could be conceived would be admissible. Testimony of acts of intercourse with other men outside that particular time would not be admissible unless there is further evidence of a continuing relationship with the other men involved. It logically follows that evidence that the mother had a prior illegitimate child several years before and has had no continuing contact with the father is also inadmissible. This may be interesting and colorful "background material" but it is inadmissible because it is immaterial and prejudicial. *See generally* 10 Am. Jur. 2d, *Bastards* § 117 (1964 reprint); Annot., 104 A.L.R. 84 (1936).

We now reach the final issue. Should the trial court have granted the motion for judgment notwithstanding the verdict? Considering the evidence and all reasonable inferences therefrom, in a light most favorable to the defendant, we hold that the defendant's evidence of his failure to ejaculate constituted substantial evidence upon which the jury could have concluded that the defendant was not the father of the child. Therefore the motion was properly denied. *State v. Hall*, 74 Wn.2d 726, 446 P.2d 323 (1968).

Reversed and remanded for a new trial.

Pearson, C.J., and Petrie, J., concur.