[No. 12053-1-I.   Division One.   April 9, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID ROSS HOLEMAN, *Appellant.*

*Reaugh & Prescott* and *Carol Hepburn,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Greg R. Hubbard, Deputy,* for respondent.

SCHOLFIELD, J.—David R. Holeman appeals his juvenile court conviction for second degree theft, alleging the trial judge erred in denying his motion to suppress evidence, including a statement he gave to police.

On April 27, 1982, two Seattle police officers went to Holeman's home to question him about the theft of a bicycle. The officers had no warrant for Holeman's arrest. David's father, Clarence Holeman, met the officers at the door, called David to the door, and a discussion followed. During the discussion, David's father became angry, causing the officers to believe they should question David at the police station. They then advised David of his *Miranda* rights,[1] and that they were going to take him down to the

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

station to continue the questioning. When one of the officers reached through the doorway to take David by the arm, David's father grabbed a crowbar and raised it above his head in a position indicating a threat to use it as a weapon against the officers. In response, the police officers drew their guns and entered the house to disarm Clarence Holeman and place him under arrest.

David and his older brother attempted to prevent their father's arrest and were both formally arrested for obstructing a public servant. At the police station, David was again advised of his *Miranda* rights, which he waived in writing. He then gave Officer Pike an oral confession and directed the officer to the location where the missing bicycle was hidden. David then signed a typewritten statement for Officer Pike.

David contends that his typewritten statement should have been suppressed because his warrantless arrest inside his home violated his rights under the fourth amendment to the United States Constitution, citing *Payton v. New York*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). We do not agree.

We agree that when the officers advised David of his *Miranda* rights and attempted to take him into their physical custody while he was standing inside the threshold of his home, they were attempting to make an unlawful arrest. *Payton v. New York, supra.* There were no exigent circumstances justifying that arrest.

Clarence Holeman was not justified, however, in threatening the officers with the crowbar. We rely upon the statement of the rule set forth in *State v. Westlund,* 13 Wn. App. 460, 536 P.2d 20, 77 A.L.R.3d 270 (1975), as follows:

> We hold that a bystander may not come to the aid of one being lawfully or unlawfully arrested by a uniformed police officer or one known or who should have been known to the bystander to be a police officer unless the arrestee was in actual danger of serious physical injury. Several elements, therefore, must be present before such

a third person's assault of a police officer can be justified on the basis of defense of another. First, a third party may never intervene when the only threat to the arrestee is deprivation of his liberty by an arrest which has no legal justification. Aid is justified only if serious physical injury or death is threatened or inflicted. Second, the serious physical danger threatened or inflicted must be actual. A reasonable but mistaken belief that the arrestee was about to be seriously injured or that the arrestee was entitled to protect himself from such danger is insufficient. The third party acts at his own peril and if it is subsequently determined that the arrestee was not about to be seriously injured, the third party's assault is not justifiable. Third, the physical injury must be serious, the police actions of the type which shock the conscience. Fourth, only force reasonable and necessary to protect the arrestee may be used against the officer.

13 Wn. App. at 468–69; RCW 9A.76.020.

When Clarence Holeman raised the crowbar over his head in a threatening manner, he committed the criminal offense of assault. RCW 9A.36.010–.040; *State v. Stewart,* 73 Wn.2d 701, 440 P.2d 815 (1968). The assault was not justified by the fact that his actions were in response to an attempted invalid arrest of his son because David was never in actual danger of physical injury. Therefore, Clarence Holeman's arrest was legal.

█ It is immaterial that all the arrests arose out of the officers' initial attempt to unlawfully arrest David. In *State v. Rousseau,* 40 Wn.2d 92, 241 P.2d 447 (1952), the appellant was in the officer's custody following an unlawful arrest when he pushed the officer in front of an oncoming automobile in an attempt to escape. Appellant was pursued and arrested. The court held the second arrest was valid stating:

It is not the appellant's flight, but the fact that he pushed the officer into the path of an oncoming automobile, which could have seriously injured or killed the officer as effectively as though the appellant had used a gun, a knife, or other deadly weapon, that raises the question of whether the appellant used unreasonable force in resisting arrest and thereby committed an unjustified assault upon the officer, which would make the second

apprehension and arrest of the appellant lawful.
*State v. Rousseau, supra* at 95.

Because Clarence Holeman's arrest was legal, David's arrest for obstructing was valid. It follows that the trial court was correct in denying his motion to suppress the voluntary statement he gave to the police officer following that valid arrest.

Judgment affirmed.

ANDERSEN, J., concurs.

WILLIAMS, J. (dissenting)—The police, acting without authority, unlawfully entered Clarence Holeman's home, seizing his son and creating a situation of arrest by combat. Because the majority opinion approves this procedure, I dissent.

Two questions are presented: whether David Holeman was illegally arrested in his home and whether the Holeman family's resistance to the invasion somehow made the police action legitimate.

The State concedes that David Holeman was arrested when the police told him that they were taking him to the station house for further questioning. Brief of Respondent, at 4. That arrest was illegal because David Holeman was in his home and the police did not have an arrest warrant. *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980); *United States v. Johnson,* 626 F.2d 753 (9th Cir. 1980), *aff'd on other grounds,* 457 U.S. 537, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982); *State v. Counts,* 99 Wn.2d 54, 659 P.2d 1087 (1983). An illegal arrest is an assault and battery. *State v. Rousseau,* 40 Wn.2d 92, 241 P.2d 447 (1952).

For most citizens faced with criminal assault, withdrawal is the best course of action, discretion being the better part of valor. But our law recognizes that a person cannot be expected to retreat beyond his own home. The United States Constitution provides:

The right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .

U.S. Const. amend. 4. The Washington Constitution provides:

No person shall be disturbed in his private affairs, *or his home invaded, without authority of law.*

(Italics mine.) Const. art. 1, § 7.

Although it is said in the majority opinion that a third party has no right to intervene to prevent an unlawful arrest, the United States Supreme Court has sanctioned just such action:

". . . [A]n officer who acts under a void precept, and a person doing the same act who is not an officer, stand on the same footing; and any third person may lawfully interfere to prevent an arrest under a void warrant, doing no more than is necessary for that purpose." [*Commonwealth v. Crotty*], 10 Allen, 404, 405 [92 Mass. 403].

*West v. Cabell,* 153 U.S. 78, 86, 38 L. Ed. 643, 14 S. Ct. 752 (1894). The recent trend has been to restrict this right to close relatives.

One who is illegally arrested may use a reasonable amount of force to repel the assault. *Persons in close relationship of affinity or consanguinity may resist an officer in making an unlawful arrest.* 6 C.J.S. Assault and Battery §§ 92, 93, pp. 949, 950.

(Italics mine.) *United States v. Moore,* 332 F. Supp. 919, 920 (E.D. Va. 1971) (warrantless arrest in home resisted by wife). *Accord, People v. Gallo,* 206 Misc. 935, 135 N.Y.S.2d 845 (1954) (brother); *King v. State,* 132 Tex. Crim. 200, 103 S.W.2d 754 (1937) (brother); *King v. State,* 131 Tex. Crim. 442, 99 S.W.2d 932 (1936) (brother).

*State v. Westlund,* 13 Wn. App. 460, 536 P.2d 20, 77 A.L.R.3d 270 (1975), relied upon by the majority, is inapposite. In that case, unrelated third parties sought to intervene and prevent a *lawful* public arrest because they believed that the police officers were using excessive force. In this case, a father sought to prevent the *unlawful* arrest of his juvenile son in their own home. He was not an inter-

meddling bystander, but was, rather, a citizen using reasonable means to protect the liberty of his son and his home from invasion.

Upon entering the home, the officers committed two criminal acts, assault in seizing the boy, RCW 9A.36.040, and criminal trespass in crossing the threshold, RCW 9A.52.070. These acts were so needless. The investigation was of a boy's bicycle stolen in a settled, residential neighborhood. The officers, being well armed and occupying the "high ground" were in no danger and easily could have secured the necessary warrant.[2]

The priceless right to defend one's home against an unlawful intrusion must be preserved. I would reverse.

Review granted by Supreme Court July 24, 1984.

---

[2]The unlawful arrest of David Holeman and his family's justified resistance were all part of the same transaction taking place in a matter of seconds. Thus, I do not agree with the majority's assertion that an independent, lawful "second arrest" of David occurred.