[No. 50606-0. En Banc. January 10, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID ROSS HOLEMAN, *Petitioner*.

*Reaugh & Prescott* and *Carol L. Hepburn,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Greg R. Hubbard, Deputy,* for respondent.

DORE, J.—We hold that the police cannot arrest a suspect without a warrant, absent exigent circumstances, while the suspect is standing in the doorway of his house. We further hold that a person has no right to come to the aid of another who is arrested by uniformed police officers where there is no threat of serious bodily injury to the arrestee.

## FACTS

Two uniformed police officers went to David Holeman's home to question him about the theft of a bicycle. David's father, Clarence Holeman, met the officers at the door and called David to the doorway. The officers, while remaining outside, questioned David as he was standing in the doorway. David denied any involvement in the theft. During the discussion, Clarence Holeman became angry and told the police they had no right to arrest David without a warrant. At this point, the officers read David his *Miranda*[1] rights and decided to question him at the police station despite the fact that they did not have a warrant. Both parties agree that at this point David was under arrest.

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

After reading David his *Miranda* rights, one of the officers reached through the doorway to take David by the arm, whereupon David's father grabbed a crowbar and raised it above his head in a threatening position. In response, the officers drew their guns and entered the house to disarm Clarence Holeman and place him under arrest for obstructing a public servant.[2] David and his older brother subsequently attempted to prevent their father's arrest and were also formally arrested for obstructing. At the police station, David was again advised of his *Miranda* rights, which he waived in writing. He then gave an oral confession and directed the police to the location where the missing bicycle was hidden.

At trial, David asserted that his arrest was illegal and, hence, his confession was inadmissible. The trial court held that the arrest was legal. On appeal, the Court of Appeals held that the first attempt to take David to the police station was an illegal arrest. However, the court ruled that the subsequent arrest of David for obstructing an officer was valid and, hence, David's confession was admissible. We agree.

■ David was arrested twice. The first arrest took place while David was standing in the doorway of his house. The State does not contest that David was under arrest at this point in time despite the fact that the officers never told David that he was under arrest. A person is under arrest for constitutional purposes when, by a show of authority, his freedom of movement is restrained. *United States v. Mendenhall,* 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870, *reh'g denied,* 448 U.S. 908, 65 L. Ed. 2d 1138, 100 S. Ct. 3051 (1980). Here, when the police began reading David his *Miranda* rights, he was not free to leave and, as such, was under arrest for Fourth Amendment purposes.

---

[2]RCW 9A.76.020 provides that any person who knowingly hinders, delays, or obstructs any public servant in the discharge of his official powers or duties shall be guilty of a misdemeanor.

## DECISION

■ This arrest of David was unlawful because, without a warrant and absent exigent circumstances,[3] the police are prohibited from arresting a suspect while the suspect is standing in the doorway of his house.

> [T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Payton v. New York,* 445 U.S. 573, 590, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). It is no argument to say that the police never crossed the threshold of David's house. It is not the location of the arresting officer that is important in determining whether an arrest occurred in the home for Fourth Amendment purposes. Instead, the important consideration is the location of the arrestee. *United States v. Morgan,* 743 F.2d 1158 (6th Cir. 1984); *United States v. Johnson,* 626 F.2d 753 (9th Cir. 1980), *cert. granted,* 454 U.S. 814 (1981), *aff'd,* 457 U.S. 537 (1982). A person does not forfeit his Fourth Amendment privacy interests by opening his door to police officers. *State v. Counts,* 99 Wn.2d 54, 659 P.2d 1087 (1983). A person's home can be invaded to the same extent when the police remain outside the house and call a person to the door as when the police physically enter the household itself. Our state constitution guarantees that

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

Const. art. 1, § 7. Here the police did not have the proper authority of law, *i.e.,* a warrant. Consequently, this first arrest of David was unlawful.

■ In contrast to the first arrest, the second arrest of David for obstructing a public servant was lawful. David argues that he had the right to aid his father in resisting what he believed to be an illegal arrest of his father. We do not agree. It is true that at one time in this nation's history

---

[3]The State does not contend that exigent circumstances existed in this case.

some states allowed a person to aid a family member in what he believed was an unlawful arrest. *See, e.g., People v. Gallo,* 206 Misc. 935, 135 N.Y.S.2d 845 (1954); *King v. State,* 131 Tex. Crim. 442, 99 S.W.2d 932 (1936). However, the recent trend has been to prohibit people from interfering with an arrest that is being made by police officers. *See, e.g., People v. Bailey,* 108 Ill. App. 3d 392, 439 N.E.2d 4 (1982); *People v. Santiago,* 69 Misc. 2d 1098, 332 N.Y.S.2d 733 (1972); *Gonzalez v. State,* 574 S.W.2d 135 (Tex. Crim. App. 1978). Our own Court of Appeals in *State v. Westlund,* 13 Wn. App. 460, 467, 536 P.2d 20, 77 A.L.R.3d 270 (1975) elaborated on why, absent a threat of serious bodily injury to the arrestee, a person is prohibited from interfering with an arrest made by a uniformed police officer:

> [T]he arrestee's right to freedom from arrest without excessive force that falls short of causing serious injury or death can be protected and vindicated through legal processes, whereas loss of life or serious physical injury cannot be repaired in the courtroom. However, in the vast majority of cases, as illustrated by the one at bar, resistance and intervention make matters worse, not better. They create violence where none would have otherwise existed or encourage further violence, resulting in a situation of arrest by combat. Police today are sometimes required to use lethal weapons for self–protection. If there is resistance on behalf of the person lawfully arrested and others go to his aid, the situation can degenerate to the point that what should have been a simple lawful arrest leads to serious injury or death to the arrestee, the police or innocent bystanders. Orderly and safe law enforcement demands that an arrestee not resist a lawful arrest and a bystander not intervene on his behalf unless the arrestee is actually about to be seriously injured or killed.

We find the policy reasons set forth in *Westlund* convincing and, accordingly, adopt its holding.

David attempts to distinguish *Westlund* by asserting that the first arrest in *Westlund* was lawful whereas David's first arrest was unlawful. The court in *Westlund,* however, did not find such a distinction relevant:

In this situation we see no difference in whether the arrest is lawful or unlawful. The third party is usually in no position to judge the initial legality of the arrest.

*Westlund,* at 468. *Accord, People v. Bailey,* 108 Ill. App. 3d 392, 439 N.E.2d 4 (1982) (an individual may not use force to resist an arrest which he knows is being made by a peace officer even if he believes the arrest is unlawful and it is, in fact, unlawful). The determination of whether an arrest is lawful is often difficult and should not be left to bystanders who may have only a limited knowledge of the relevant law and who may let their emotions control their judgment.

As the second arrest of David was lawful, his confession was properly admitted as evidence. He was advised of his *Miranda* rights three times. During the third time, the police used a standard confession form wherein David initialed each line as it was explained to him. In addition, the officer asked David two or three times if he wanted an attorney and David always refused, saying that he wanted to talk. Consequently, the police allowed David to make a statement wherein David confessed to taking the bicycle. Accordingly, we affirm the decision rendered by the Court of Appeals.

UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM and WIELAND, JJ. Pro Tem., concur.

Reconsideration denied March 5, 1985.