FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE SEP 2 0 2018
_____
CHIEF JUSTICE

This opinion was filed for record

at _8:00 am_ on Sept 20, 2018

_____
SUSAN L. CARLSON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 95192-6 |
| v. | ) | |
| | ) | En Banc |
| STEVEN BRIAN YELOVICH, | ) | |
| | ) | |
| Petitioner. | ) | Filed: SEP 2 0 2018 |
| | ) | |

YU, J.— Petitioner Steven Yelovich asks this court to consider whether an individual defendant is entitled to a jury instruction on defense of property pursuant to RCW 9A.16.020 as an affirmative defense to assault. While the issue presented raises many interesting questions about the availability of the defense in general assault cases, the facts of this case govern the outcome, and so we resolve it on narrower grounds. We hold a defense of property jury instruction is not available when there is a valid court order prohibiting the defendant from contacting the protected party. We therefore affirm the Court of Appeals on different grounds.

FACTUAL AND PROCEDURAL BACKGROUND

Steven Yelovich and Faith De Armond dated for more than five years. 3 Verbatim Transcript of Proceedings (VTP) (Apr. 7, 2016) at 255; 4 VTP (Apr. 12, 2016) at 322. It is undisputed that at all times relevant to this case there was a valid court order prohibiting Yelovich from contacting De Armond. 3 VTP (Apr. 7, 2016) at 256; Ex. 1. The order forbids Yelovich from "[c]oming near and from having any contact whatsoever, in person or through others, by phone, mail or any means, directly or indirectly" with De Armond. Ex. 1. It also prohibited Yelovich from causing any physical harm or bodily injury to De Armond. *Id.*

On the day in question, Yelovich parked his car in the driveway of his son's house. 3 VTP (Apr. 7, 2016) at 258-60. He was moving boxes from the garage, and an approximately four-and-a-half-foot wood fence separated him and his car. *Id.* at 260-61. After about an hour, Yelovich believed he saw someone through the fence, but he could not identify the person. When he went to his car, which had a broken passenger window, he saw that his cell phone and other personal belongings were missing. *Id.* at 264-65. He saw De Armond walking down the street, and he testified at trial that he "knew then that she did it." *Id.* at 265.

Yelovich was aware that he was prohibited from contacting De Armond, but he thought the police would not arrive in time to recover his phone. *Id.* at 267. Although he admitted it "was an irrational, radical move," he chased after her in

2

his car. *Id.* When he found her a few blocks later, he got out of his car and attempted to take her purse because he believed she had put his phone in it. *Id.* at 271-75. A struggle ensued, and De Armond testified that he was "bouncing [her] off the ground." 4 VTP (Apr. 12, 2016) at 325. Her testimony was corroborated by a Good Samaritan who intervened. He testified that he "saw a man straddling a female. I saw him striking her," and "he was lifting her up off the ground and slamming her on the ground." 2 VTP (Apr. 6, 2016) at 125-26, 128.

Both the fire department and police responded to the incident. De Armond was treated for minor injuries, including redness, bruising, and a small laceration. *Id.* at 154-55. The responding police officer who interviewed De Armond noted she seemed intoxicated and "[s]he had a really hard time keeping herself together." *Id.* at 150.

The State charged Yelovich with one count of felony violation of a no-contact order predicated on his assault of De Armond and one count of bail jumping. Clerk's Papers (CP) at 47-48. At trial, he argued that he was entitled to a jury instruction on defense of property because he was protecting his cell phone, which he believed De Armond had stolen. The judge refused, reasoning that Yelovich "was acting offensively, not defensively to protect property." 4 VTP (Apr. 12, 2016) at 382. The judge explained,

> I am not aware of a single case in the State of Washington or any
> statutory authority that would let him do that, that would let him use

3

force to recover property under such circumstances. I am unwilling to instruct the jury that as a matter of law he could use force to get back a cell phone that he believed had been wrongly taken. The law doesn't support that.

*Id.* The jury was then instructed that to convict Yelovich of felony violation of a no-contact order it must find each of the following elements proved beyond a reasonable doubt:

(1) That on or about June 7, 2015, there existed a no-contact order applicable to the defendant;
(2) That the defendant knew of the existence of this order;
(3) That on or about said date, the defendant knowingly violated a provision of this order;
(4) *That the defendant's conduct was an assault;* and
(5) That the defendant's act occurred in the State of Washington.

CP at 74 (emphasis added). The jury convicted Yelovich as charged, and he appealed only his felony violation of the no-contact order on the basis that he was improperly denied a jury instruction. *Id.* at 62, 64. The Court of Appeals affirmed the trial court, and Yelovich appealed. We granted review.

## ISSUE

Whether it was reversible error for the trial court to refuse to instruct the jury on the affirmative defense of defense of property?

## ANALYSIS

Violation of a no-contact order is usually a gross misdemeanor, but it is elevated to a class C felony if the restrained party assaults the protected party during the violation. RCW 26.50.110(4). Therefore, assault is an essential

4

element of the crime of felony violation of a no-contact order, and the State must prove it occurred beyond a reasonable doubt. *State v. Oster*, 147 Wn.2d 141, 146, 52 P.3d 26 (2002). The issue we must decide is whether Yelovich is entitled to raise defense of property pursuant to RCW 9A.16.020 as an affirmative defense to the assault element. We review the contested jury instruction de novo because it was decided as a matter of law, as opposed to abuse of discretion when the decision rests on the facts of the case. *Taylor v. Intuitive Surgical, Inc.*, 187 Wn.2d 743, 767, 389 P.3d 517 (2017) (quoting *Kappleman v. Lutz*, 167 Wn.2d 1, 6, 217 P.3d 286 (2009)).

Yelovich relies on RCW 9A.16.020 to claim that he may use defense of property as an affirmative defense. The statute states:

> The use, attempt, or offer to use force upon or toward the person of another is not unlawful . . .
>
> . . . .
>
> . . . [w]henever used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person, or a malicious trespass, *or other malicious interference with real or personal property* lawfully in his or her possession, in case the force is not more than is necessary.

RCW 9A.16.020(3) (emphasis added). Yelovich argues the statute provides "a valid affirmative defense whenever assault is charged or whenever assault is an element of the charged crime," and therefore it may be used when the charged crime is felony violation of a no-contact order. Suppl. Br. of Pet'r at 8. However,

5

Yelovich's position ignores the critical role of the underlying no-contact order in this case.

The no-contact order prohibits Yelovich from "having any contact whatsoever" with De Armond and expressly forbids him from "[c]ausing or attempting to cause physical harm, bodily injury, [or] *assault*." Ex. 1 (emphasis added). The standard language included in the order warns Yelovich that as the restrained party, he "ha[s] *the sole responsibility* to avoid or refrain from violating the order's provisions. Only the court can change the order upon written application." Ex. 1, at 2 (emphasis added). Despite this clear language, Yelovich claims that when he is protecting his property, he has the right not only to contact De Armond but also to use violent force against her, thus reducing his felony violation to a misdemeanor.

In effect, Yelovich seeks to circumvent the plain language of the order while avoiding the directive that any modifications must be made by "written application" to the court. *Id.* This court rejected a similar argument in *State v. Dejarlais*, 136 Wn.2d 939, 969 P.2d 90 (1998). The defendant argued that the no-contact order could not be enforced because the protected party consented to the contact. *Id.* at 943. We held that consent "is not only inconsistent with, but would undermine" the legislature's intent to protect victims of domestic violence. *Id.* at 944. Furthermore, the court explained, allowing parties to consent to contact

6

"would result in a de facto modification" of the order, despite the order's terms that it can be modified only after notice to all parties and a hearing. *Id.* at 945.

We apply the same reasoning here and decline to create an exception for defense of property because doing so is inconsistent with the plain language of the order and the legislature's policy. By the terms of the order, Yelovich has no power to engage in self-help if doing so brings him into contact with De Armond. This bright line rule ensures that victims are not left wondering whether conduct prohibited by the no-contact order might later be deemed lawful. It therefore furthers the legislature's goal to provide "victim[s] of domestic violence the maximum protection from abuse." RCW 10.99.010.

In sum, Yelovich had "sole responsibility" for not violating the terms of a valid court order that forbids him from contacting De Armond, and so he had no authority to chase De Armond when he believed she had taken his phone.[1] Ex. 1, at 2. Accordingly, Yelovich is not entitled to a jury instruction on defense of property because his conduct violated the court order.

---

[1] We do not address whether necessity can ever be a defense to violation of a no-contact order because Yelovich concedes that he did not raise necessity as a defense. Suppl. Br. of Pet'r at 8 n.3. We also note that in this instance, Yelovich had reasonable, legal alternatives because he admitted at trial he could have called the police. 3 VTP (Apr. 7, 2016) at 267.

7

CONCLUSION

Because Yelovich was subject to a valid court order prohibiting him from contacting De Armond, we hold that Yelovich is not entitled to a defense of property jury instruction to rebut the assault element. We therefore affirm the trial court and the Court of Appeals on different grounds.

_____
Jw, J

WE CONCUR:

_____
Fairhurst, CJ.

_____
Stephens, J.

_____
Madsen, J.

_____
González, J.

_____

_____

No. 95192-6

WIGGINS, J. (concurring in result only)—The majority reaches the correct conclusion in this case, but it does so for the wrong reasons. We are not asked to decide whether the protection of property can serve as a complete defense to the crime of violation of a no-contact order. It is clear that it cannot. Instead, we must decide whether defense of property can be used to rebut the single essential element of assault, which elevates the violation from a gross misdemeanor to a felony. The majority fails to apply the plain language of RCW 9A.16.020 and rewrites the law in an understandable but misguided attempt to protect victims from abusers who violate domestic no-contact orders. The majority also misapprehends the consequences of permitting a limited defense of property under the plain language of RCW 9A.16.020. The defense does not rewrite no-contact orders to justify assaults, nor does it undermine the legislature's intent to protect victims of domestic violence. Consequently, I would instead hold that an affirmative defense under RCW 9A.16.020 is generally available to rebut the element of assault in felony violation of a no-contact order. But because Steven Yelovich sought to recover rather than protect his property, the defense was not available to him in this case. Thus, I would also affirm.

I.   Defense of property

In most circumstances, the violation of a domestic violence no-contact order is a gross misdemeanor. RCW 26.50.110(1)(a). However, if the violation involves an assault, it becomes a felony. RCW 26.50.110(4).

Here, the State alleged that Yelovich violated a no-contact order by assault. Clerk's Papers (CP) at 3-4. Based on that charge, the trial court instructed the jury as follows:

> To convict the defendant of the crime of felony violation of a court order as charged in Count I, each of the following five elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about June 7, 2015, there existed a no-contact order applicable to the defendant;
>
> (2) That the defendant knew of the existence of this order;
>
> (3) That on or about said date, the defendant knowingly violated a provision of this order;
>
> (4) *That the defendant's conduct was an assault*; and
>
> (5) That the defendant's act occurred in the State of Washington.

CP at 74 (emphasis added). Thus, assault was an essential element of the crime. *State v. Oster*, 147 Wn.2d 141, 146, 52 P.3d 26 (2002). The jury was further instructed on the elements required to find that an assault had occurred.

The fact that the no-contact violation included an alleged assault elevated Yelovich's violation from a gross misdemeanor to a felony. Without the assault, Yelovich would have still been charged with violating the no-contact order, but the offense would have been a gross misdemeanor, not a felony. RCW 26.50.110. As a

2

result, the trial court also instructed the jury on the lesser included offense of violation

of a court order:

> The defendant is charged in count I with Felony Violation of a Court Order. If, after full and careful deliberation on this charge, you are not satisfied beyond a reasonable doubt that the defendant is guilty, then you will consider whether the defendant is guilty of the lesser crime of Violation of a Court Order.
>
> . . . .
>
> A person commits the crime of violation of a court order when he or she knows of the existence of a court order and knowingly violates such order.

CP at 79-80.

Yelovich argues that he should have been able to raise a defense of protection

of property to rebut the element of assault in the charge of felony violation of a no-

contact order. If successful in convincing the jury on a defense of property, Yelovich

would have been guilty only of a misdemeanor violation of a no-contact order, not a

felony violation.

Whether defense of property is a valid affirmative defense to the element of

assault in felony violation of a domestic violence no-contact order is a question of first

impression. To answer this question, we must interpret the language of and

relationship between RCW 9A.16.020, which specifies the situations in which the use

of force is not unlawful, and RCW 26.50.110, which criminalizes the violation of

protection orders.

Our first priority in statutory interpretation is to "ascertain and carry out . . .

legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43

3

P.3d 4 (2002). We first examine the plain language of the statute "as '[t]he surest indication of legislative intent.'" *State v. Larson*, 184 Wn.2d 843, 848, 365 P.3d 740 (2015) (alteration in original) (quoting *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)). To interpret a statute's plain language, we examine the text of the statute, "'as well as "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole."'" *Id.* (quoting *Ervin*, 169 Wn.2d at 820) (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005))); *see also Campbell & Gwinn*, 146 Wn.2d at 11 (stating that "meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question"). We may not interpret a statute in a way that renders a portion "'meaningless or superfluous.'" *State v. K.L.B.*, 180 Wn.2d 735, 742, 328 P.3d 886 (2014) (quoting *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 601, 278 P.3d 157 (2012)).

I begin with RCW 9A.16.020, which specifies the situations in which the use of force is not unlawful. Relevant here is RCW 9A.16.020(3), which discusses when force may be used to defend property:

> The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases:
>
> . . . .
>
> . . . Whenever used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person, or a malicious trespass, or other malicious interference with real or personal property lawfully in his or her possession, in case the force is not more than is necessary.

4

The statute has no limiting language, stating that the use of force is not unlawful "[w]henever" a party uses reasonable force to prevent interference with his or her property. *Id.* (emphasis added). The statute does not define "whenever," but the ordinary definition is very broad: "at any or all times that : in any or every instance in which . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2602 (2002). Thus, the plain language of the statute authorizes the use of force in any instance in which a party uses a reasonable amount of force to prevent interference with his or her personal property. RCW 9A.16.020(3). The defense of property is commonly used as an affirmative defense in assault cases.

For example, in *State v. Bland*, the Court of Appeals held that the jury was improperly instructed on a defense of property. 128 Wn. App. 511, 513, 116 P.3d 428 (2005). Bland invited Moore to stay at his house after she had been released from jail. *Id.* The two argued, and Bland chased Moore into a bedroom while holding a gun. *Id.* Bland argued that he acted to prevent Moore from damaging his property. *Id.* Because the jury instructions failed to properly instruct the jury on Bland's theory of defense of property, the court remanded the case for further proceedings. *Id.*; *see also Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 125 P.2d 681 (1942) (holding that the jury should have been instructed on defense of property in a case of alleged assault where the defendant argued he was preventing the victim from taking property).

The plain language of RCW 9A.16.020 does not limit the use of this defense to those cases in which assault is charged independently. As a result, the plain language

of RCW 9A.16.020 would apply to the element of assault in felony violation of a

domestic violence no-contact order. The defense, if successful, justifies only the use

of force to protect property. The affirmative defense does not justify the violation of a

no-contact order. Thus, a successful defense is successful only in refuting the singular

assault element, not the entire crime. This does not "circumvent the plain language"

of a no-contact order. Majority at 6. It simply reduces the crime from a felony violation

of a no-contact order predicated on assault to a gross misdemeanor violation of a no-

contact order.

However, the majority concludes that the legislative intent and the public policy

underlying domestic violence no-contact orders require us to interpret RCW 26.50.110

as prohibiting the defense in this context. Majority at 7. Based on the language of

RCW 26.50.110, I respectfully disagree.[1]

RCW 26.50.110 is part of the comprehensive legislative scheme of addressing

and preventing domestic violence. It criminalizes the violation of protection orders:

> (1)(a) Whenever an order is granted under this chapter . . . and the
> respondent or person to be restrained knows of the order, a violation of
> any of the following provisions of the order is a gross misdemeanor,
> except as provided in subsections (4) and (5) of this section:
>
> . . . .
>
> (4) Any assault that is a violation of an order issued under this
> chapter . . . and that does not amount to assault in the first or second
> degree . . . is a class C felony, and any conduct in violation of such an
> order that is reckless and creates a substantial risk of death or serious
> physical injury to another person is a class C felony.

---

[1] I also note that the majority fails to support its conclusion with any statutory language, choosing instead to focus on the language of the no-contact order. Majority at 6. In fact, the majority fails to even engage in a statutory analysis of the statutes at issue here.

RCW 26.50.110. The legislature created the domestic violence protection order so that victims of domestic violence have "easy, quick, and effective access to the court system." LAWS OF 1992, ch. 111, § 1. It found that protective orders are a "valuable tool to increase safety for victims and to hold batterers accountable." *Id.* The legislature also made numerous general findings about the evils of domestic violence:

> Domestic violence is a problem of immense proportions affecting individuals as well as communities. Domestic violence has long been recognized as being at the core of other major social problems: Child abuse, other crimes of violence against person or property, juvenile delinquency, and alcohol and drug abuse. Domestic violence costs millions of dollars each year in the state of Washington for health care, absence from work, services to children, and more. The crisis is growing.
>
> . . . .
>
> Domestic violence must be addressed more widely and more effectively in our state: Greater knowledge by professionals who deal frequently with domestic violence is essential to enforce existing laws, to intervene in domestic violence situations that do not come to the attention of the law enforcement or judicial systems, and to reduce and prevent domestic violence by intervening before the violence becomes severe.

*Id.* Based on this language, it is clear that the legislature intended to protect victims of domestic violence from future harm through the creation of protective orders. Previously, we have relied on this intent when deciding whether to recognize a *complete* defense to the crime of violating a no-contact order.

For example, we have refused to recognize consent as a defense to the crime of violating a domestic violence no-contact order. *State v. Dejarlais*, 136 Wn.2d 939, 942, 969 P.2d 90 (1998). We held that "allowing consent as a defense is not only inconsistent with, but would undermine, [the legislature's] intent." *Id.* at 944. We also

7

noted that "[t]he statutory elements of the crime of violation of a protection order do not address consent. Nor did the Legislature affirmatively establish consent as a defense elsewhere in RCW 26.50." *Id.* at 943.

Here, however, we are faced with a different question. We are not deciding whether the protection of property can serve as a complete defense to the crime of violation of a no-contact order. It is clear that it cannot. Instead, we must decide whether defense of property can be used to rebut the essential element of assault in felony violation of a no-contact order.

Unlike *Dejarlais*, here, the legislature has explicitly permitted the affirmative defense for the use of force to protect property. "[W]henever" a party uses reasonable force to protect his or her property, the defense of property may apply. RCW 9A.16.020(3). Assault, which necessarily involves the use of force, is an essential element of the crime of felony violation of a no-contact order, RCW 26.50.110(4), and the word "whenever" is unambiguous—it does not exclude any context.

In contrast, we recognized in *Dejarlais* that the misdemeanor crime of violation of a no-contact order did not address consent or any other applicable defenses. 136 Wn.2d at 943. Thus, the situation in that case was fundamentally different. We may not interpret RCW 9A.16.020 in a way that renders any portion meaningless or superfluous. *K.L.B.*, 180 Wn.2d at 742. Because the legislature has explicitly permitted the defense of property "whenever" a party uses reasonable force to protect his or her property, the statutory language of the laws at issue permits the defense.

8

Neither does the application of the defense to the element of assault undermine the legislature's intent to protect victims of domestic violence. The defense does not exculpate a defendant from violating the terms of a no-contact order, contrary to the majority's claims otherwise. Majority at 6. At most, the application of the defense, if found credible by a jury, would lower the crime from a class C felony to a gross misdemeanor. RCW 26.50.110. In either case, the State will still "hold batterers accountable" for violating a court's order of no-contact. LAWS OF 1992, ch. 111, § 1.

Given the language of the statutes at issue, and the fact that even in defense of property situations defendants will still be accountable for violating a no-contact order, I would hold that defense of property is generally available to rebut the element of assault in felony violation of a no-contact order predicated on assault.

II.     The use of force to recover property

Here, Yelovich used force against Faith De Armond in an attempt to *recover* his already stolen property. Thus, we must also determine whether the defense of property includes the right to use force to recover stolen property. Based on the statutory language and the modern trend of the common law, I would hold that the defense does not justify the use of force to recover stolen property.

RCW 9A.16.020(3) reads as follows:

The use, attempt, or offer to use force upon or toward the person of another is not unlawful . . . :

. . . .

. . . [w]henever used by a party about to be injured . . . in preventing or attempting to prevent . . . malicious interference with real or personal property lawfully in his or her possession, in case the force is not more than is necessary.

The statute has three main requirements. First, the defendant must be "about to be injured." *Id.* Second, the defendant must be "preventing or attempting to prevent" interference with property. *Id.* Third, that property must be "lawfully in [the defendant's] possession." *Id.*

These requirements make it clear that defense of property must be used defensively rather than offensively. Once the interference with the defendant's property is complete, the defendant is not "about to be injured," nor can he "prevent[ ] or attempt[ ] to prevent" the interference. *Id.* Instead, at that point, any injury to the defendant has occurred, and any use of force necessarily involves the recovery of property, rather than the prevention of the thief's interference with that property. Additionally, a defendant may use reasonable force only to protect property that is "lawfully in his or her possession." *Id.* When the interference with the defendant's property is complete, that property is no longer in the defendant's possession. As a result, once the defendant loses control of the property and can no longer act to prevent the interference, defense of property no longer applies.

Although the statutory language is clear that defense of property does not apply to situations involving the recovery of property, Yelovich makes two arguments that the use of force to recover property is sanctioned—either under the statute or under the common law. First, Yelovich argues that a malicious interference with property is not complete once an owner loses possession of his or her property. Second, he argues that there is a common law right to use reasonable force to recover property,

10

as long as the recovery is accomplished during a "fresh pursuit." I address each of these arguments in turn and find neither persuasive.

*A. Malicious interference with property*

Yelovich first argues that malicious interference with property is incomplete when a victim discovers that his or her property has been stolen and the thief is still within sight of the victim. Neither the language of the statute nor the case law supports this position.

First, RCW 9A.16.020(3) implies that a malicious interference with property is complete once the victim no longer has possession of the property. The statute permits a person to use reasonable force to prevent a "malicious interference with real or personal property lawfully in his or her possession." *Id.* "Possession" is "the act or condition of having in or taking into one's control or holding at one's disposal . . . something owned, occupied, or controlled . . . ." WEBSTER'S, *supra*, at 1770. Thus, once a thief has possession of the property, the defendant lacks possession and the statute no longer applies.

Second, other jurisdictions with similarly worded statutes have held that interference with property is complete once a thief takes possession of property and moves that property away from a defendant's control. For example, in *People v. Oslund*, the Colorado Court of Appeals held that a defendant was not entitled to a defense of property instruction when he pursued and punched a thief who had allegedly stolen property from the defendant's car. 2012 COA 62, ¶¶ 23-26, 292 P.3d 1025, 1029. The court concluded that "the theft was completed when [the thief] not

only exercised control of the property, but moved it away from an area within defendant's control." *Id.* ¶ 24.

The Hawaii Supreme Court relied on similar reasoning when it held that "'[a]n essential element of the so-called justification defenses[2] is that a direct causal relationship be reasonably anticipated to exist between the defender's action and the avoidance of harm.'" *State v. Marley*, 54 Haw. 450, 472-73, 509 P.2d 1095 (1973) (quoting *United States v. Simpson*, 460 F.2d 515, 518 (9th Cir. 1972)). As a result, Hawaii and other states require that the defendant be present during the thief's interference with the property for defense of property to apply. *See id.*; *see also State v. Nelson*, 329 N.W.2d 643, 646 (Iowa 1983) ("[T]he criminal act that defendant seeks to prevent or terminate must be committed in defendant's presence.").

Here, the harm to be avoided in RCW 9A.16.020(3) is the deprivation of the defendant's possession of property. "When [the defendant] is not present at the time of wrongful taking, or the property is elsewhere, there is no necessity or urgency that would call for the use of force to prevent the wrongful activity." *Nelson*, 329 N.W.2d at 646. Once the thief obtains possession of the property and the defendant must pursue him or her to *regain* possession, the malicious interference is complete, and the defense of property statute does not apply.

---

[2] "Prevention or termination of the commission of a crime is only one of several 'justification' defenses. Some of the others are self-defense, defense of another, and defense of property." *State v. Marley*, 54 Haw. 450, 470, 509 P.2d 1095 (1973).

As a result, I would hold that malicious interference with property is complete once the thief obtains possession of the defendant's property and moves that property beyond the defendant's control.

*B. Common law right to use force to recover property*

Yelovich next argues that there is a common law defense that permits the use of force to recover property so long as the property is recovered during a fresh pursuit. Fresh pursuit is a common law doctrine, now codified in RCW 10.93.120, that permits law enforcement officials to make arrests outside of their usual jurisdiction when they are in "fresh pursuit." *State v. Malone*, 106 Wn.2d 607, 609-10, 724 P.2d 364 (1986). The statute defines "fresh pursuit" as "pursuit without unreasonable delay." RCW 10.93.120(2). The statute also incorporates the common law definition of "fresh pursuit." *Id.* The common law definition has five elements; relevant here are unnecessary delay, continuous and uninterrupted pursuit, and "'a relationship in time between the commission of the offense, commencement of the pursuit, and apprehension of the suspect.'" *City of Tacoma v. Durham*, 95 Wn. App. 876, 879, 978 P.2d 514 (1999) (quoting *City of Wenatchee v. Durham*, 43 Wn. App. 547, 550-51, 718 P.2d 819 (1986)). Yelovich argues that the same principles underlying "fresh pursuit" apply in defense of property cases where a defendant immediately pursues a thief in an attempt to recover stolen property.

For example, in *Estes v. Brewster Cigar Co.*, this court held that a person may use reasonable force in retaking property immediately after a theft occurs: "In retaking [property] from a thief whom he pursues immediately after the theft, he may call

13

persons to his aid and use such force as may be reasonably necessary to accomplish

his purpose without liability except for excess of force." 156 Wash. 465, 472, 287 P.

36 (1930). We recognized that a contrary rule would prevent property owners from

retaking property from thieves whom they witness stealing:

> A contrary rule would prevent an owner of property who caught a thief in
> the act of carrying away his property from retaking the property by force
> or by putting the thief in fear, contrary to that general principle that a man
> has the right to protect his property against the unlawful invasion of
> another by such acts of force as are necessary to so protect it.

*State v. Steele*, 150 Wash. 466, 473, 273 P. 742 (1929).

Secondary sources also discuss this common law rule. The *Restatement*

*(Second) of Torts* permits the use of force to recover property under certain conditions:

"The use of force against another for the sole purposes of retaking possession of a

chattel is privileged if (a) all the conditions stated in §§ 101-106 exist,[3] or (b) the other

knowingly causes the actor to believe that they exist." RESTATEMENT (SECOND) OF

TORTS § 100 (AM. LAW INST. 1965). *Washington Practice* defines the rule as follows:

> There is a difference between preventing a person from disturbing
> one's present possession and using force to retake possession. One
> whose possession is momentarily interrupted may use reasonable force
> to retake possession. If there has been a considerable time lag, the
> person dispossessed is required to use his legal remedies. A demand
> for possession, unless it reasonably appears useless, should be made
> before force is used to recapture the chattel. The force must be used to
> regain the property and not for a personal attack.

---

[3] Those conditions include (1) tortious taking of the chattel by another, (2) the actor is entitled to
immediate possession of the chattel, (3) the actor acts promptly after the dispossession, (4) the
actor requests the return of the chattel, (5) the actor uses force for the purpose of regaining
possession of the chattel, and (6) the use of force is reasonable to regain possession of the chattel
and is not likely to cause death or serious bodily harm. RESTATEMENT §§ 101-106.

14

16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 14.26, at 595 (4th ed. 2013) (footnotes omitted).

However, the common law is applicable in Washington only "so far as it is not inconsistent with the Constitution and laws of the United States, or of the state of Washington." RCW 4.04.010. For example, in *State v. Bravo Ortega*, we determined whether it was unlawful to arrest a gross misdemeanor suspect without a warrant if the officer was not present when the offense occurred, but the arrest was made by a team of officers who were sharing information. 177 Wn.2d 116, 297 P.3d 57 (2013). The common law permitted an officer "to arrest a suspect for a misdemeanor without a warrant *only if the offense was committed in the officer's presence.*" *Id.* at 123 (emphasis added). But, the State argued, "the common law presence rule d[id] not prohibit teams of officers from making arrests based on shared information." *Id.* at 124.

The common law rule to which the State referred was codified and amended by RCW 10.31.100, which permitted an officer to arrest a suspect for specific, enumerated offenses committed outside of the officer's presence. For all other offenses, RCW 10.31.100 allowed a warrantless arrest to be made *only* "'when the offense is committed in the presence of *the* officer.'" *Id.* at 123-24 (quoting RCW 10.31.100). The offense at issue in *Ortega* was not one of the enumerated offenses, and thus RCW 10.31.100 permitted the warrantless arrest only if the officer was present during the offense. *Id.*

15

We held that "although the state of the law prior to the adoption of a statute must be considered when construing the legislative intent, 'where, as here, a statute is plain and unambiguous, it must be construed in conformity to its obvious meaning without regard to the previous state of the common law.'" *Id.* at 125 (*quoting State ex rel. Madden v. Pub. Util. Dist. No. 1 of Douglas County*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973)). Thus, we held that even if the arrest had been permitted by the common law, "the unambiguous language of the statute removed that possibility." *Id.*

Here, applying the common law doctrine of fresh pursuit to defense of property would be inconsistent with RCW 9A.16.020(3). The common law doctrine of fresh pursuit allows the offensive use of force to retrieve property that has already transferred possession. The statute, however, establishes that defense of property may only be used *defensively*, to prevent the interference with property when the defendant is about to be injured and the property is still in his or her lawful possession. Yelovich's reliance on the common law is misplaced, as the common law doctrine is inconsistent with the relevant statutes and thus is not applicable. RCW 4.04.010.

Furthermore, the trend of modern law in Washington and across the country has been to limit the circumstances in which individuals may engage in violent self-help, like the forcible recovery of stolen property. *State v. Valentine*, 132 Wn.2d 1, 18, 935 P.2d 1294 (1997) ("'[T]he trend in this country has been away from the old rule and toward the resolution of disputes in court.'" (alteration in original) (quoting *Commonwealth v. Moreira*, 388 Mass. 596, 447 N.E.2d 1224, 1226 (1983))). During the past two decades, this court has recognized that "'[t]he concept of self-help is in

16

decline.'" *Id.* at 17 (quoting *State v. Koonce*, 89 N.J. Super. 169, 214 A.2d 428, 436 (1965)). We have held that "'self-help as a practical remedy is anachronistic'" and "'that the common law rule is outmoded in our modern society.'" *Id.* at 19 (quoting *People v. Curtis*, 70 Cal. 2d 347, 353, 450 P.2d 33, 74 Cal. Rptr. 713 (1969); *Fields v. State*, 178 Ind. App. 350, 382 N.E.2d 972, 975 (1978)). By recognizing the danger of self-help "to promote violence and increase[ ] the chances of someone getting injured or killed," *id.* (quoting *Fields*, 382 N.E.2d at 975), "we opt for the orderly resolution through the courts over what is essentially 'street justice,'" *id.* at 18 (quoting *Evans v City of Bakersfield*, 22 Cal. App. 4th 321, 27 Cal. Rptr.2d 406, 412 (1994)). Consequently, we have limited the common law defenses of self-help in circumstances like the right to resist unlawful arrest. *Id.* at 20.

The majority of jurisdictions now refuse to recognize a right to violent self-help in order to recover, rather than protect, property. *See, e.g., Yocum v. State*, 777 A.2d 782, 784 (Del. 2001) ("[T]he use of force in the protection of property does not extend to efforts to retrieve the property after the theft is accomplished. . . . To hold otherwise would sanction a form of vigilantism in which a property owner could employ force in pursuing a suspected thief or trespasser."); *People v. Scearce*, 87 P.3d 228, 231 (Colo. App. 2003) (endorsing "the basic public policy that 'even rightful owners should not be permitted to . . . use force to regain their property, once it has been taken'" (alteration in original) (quoting *State v. Miller*, 622 N.W.2d 782, 786 (Iowa Ct. App. 2000))). *Miller* also stands for the proposition that "[w]e align ourselves with the majority of states

that do not recognize a claim-of-right defense to violent reclamations of property." 622 N.W.2d at 787.

The sound reasoning of the majority rule is apparent in cases like this one. Here, Yelovich pursued De Armond on a mere suspicion that she had stolen his phone. He engaged in violent conduct in order to "retrieve" a phone that De Armond may or may not have had. A passerby noticed the altercation and intervened. While not the case here, it is not difficult to imagine a circumstance in which that passerby becomes another victim of violent force by attempting to break up the altercation.

The right to engage in violent self-help undoubtedly increases the risk of someone getting injured and killed. *Valentine*, 132 Wn.2d at 17-19. While the defendant's property rights "'can be protected and vindicated through legal processes, . . . loss of life or serious physical injury cannot be repaired in the courtroom.'" *Id.* at 20 (quoting *State v. Westlund*, 13 Wn. App. 460, 467, 536 P.2d 20 (1975)). As a result, because the right to use force to recover property tends to "'make matters worse, . . . create violence where none would have otherwise existed or encourage further violence, . . . [and potentially] lead[ ] to serious injury or death to the [defendant], the police or innocent bystanders,'" I would hold there is not a modern common law right to use force to recover stolen property. *Id.* (quoting *Westlund*, 13 Wn. App. at 467).

III.    Defense of property jury instruction

The final issue is whether Yelovich was entitled to a jury instruction on defense of property. While defense of property may be used to rebut the element of assault in

felony violation of a no-contact order predicated on assault, I would hold that Yelovich was not entitled to the instruction as a matter of law.

"A defendant 'is entitled to have the jury instructed on [his] theory of the case if there is evidence to support that theory. Failure to so instruct is reversible error.'" *State v. Harvill*, 169 Wn.2d 254, 259, 234 P.3d 1166 (2010) (alteration in original) (quoting *State v. Williams*, 132 Wn.2d 248, 259-60, 937 P.2d 1052 (1997).

Here, there was no evidence to support an instruction on defense of property. When Yelovich used force against De Armond, he was not preventing or attempting to prevent a malicious interference with property. The property—his cell phone—had already been taken. As a result, the phone was no longer in his possession, and Yelovich was acting solely in an attempt to *recover* property. As discussed above, there is no modern, valid defense to use force to recover property that has already been reduced to another's possession.

Yelovich was also not present at the time of the alleged taking. He merely suspected De Armond of theft—no phone was recovered from De Armond at the scene. "[W]hen [a defendant] pursues an innocent person under the belief that he has committed a wrong to his property, no matter how strong may be his belief, he is liable for any injury caused the person." *Estes*, 156 Wash. at 472.

As a result, Yelovich was not entitled to a defense of property instruction in these circumstances.

CONCLUSION

Yelovich was not entitled to a defense of property instruction. While the majority holds accordingly, it does so for the wrong reasons. Therefore I respectfully concur in result only.

_____

Wiggins, J.

Geo. McCud, J.

Owens, J.

21