# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>NICHOLAS JONATHON McCOSHUM,<br><br>                                  Petitioner. | No. 60913-4-II<br><br><br>UNPUBLISHED OPINION |

MAXA, J. – In this personal restraint petition (PRP), Nicholas McCoshum challenges his convictions of second degree assault and first degree unlawful possession of a firearm.

After McCoshum's fishing pole was caught on Daniel Peshkov's boat, McCoshum confronted Peshkov to demand reimbursement. During this encounter, McCoshum – who had previous felony convictions – waved an antique pistol in Peshkov's face.

The State had evidence from a federal agency that McCoshum's pistol was not considered a firearm under federal law, but the report was not given to the defense. McCoshum's friend Jessy Ashford was in the area at the time of the incident, but defense counsel did not call him as a witness. Defense counsel did not assert a defense of property defense or request redactions of evidence showing McCoshum's prior convictions. Peshkov testified at trial that McCoshum called him multiple times after the incident, but there was evidence that Ashford called Peshkov.

McCoshum argues that (1) the State unlawfully withheld evidence of the federal agency report about the antique pistol in violation of *Brady v. Maryland*[1]; (2) he received ineffective assistance of counsel because defense counsel failed to (a) assert a defense of lawful use of force in defense of his property, (b) call Ashford and other witnesses at trial, and (c) redact information from his previous criminal judgments admitted into evidence; and (3) the prosecutor committed misconduct by knowingly eliciting false testimony from Peshkov about who made the phone calls.

We hold that (1) withholding the federal agency report did not violate due process under *Brady*, (2) McCoshum's ineffective assistance of counsel claims fail, and (3) McCoshum does not show that the prosecutor elicited false testimony. Accordingly, we deny McCoshum's PRP.

FACTS

*Background*

In July 2021, McCoshum went fishing along the Columbia River. Ashford was with him. Peshkov drove a boat that got caught in McCoshum's fishing line and dragged McCoshum's fishing pole away. Peshkov cut the line from around his boat engine and took his boat to shore. Peshkov did not see McCoshum's fishing pole. McCoshum approached Peshkov and demanded to be reimbursed $600 for the fishing pole, which was a gift from his father.

Peshkov returned to his truck, but McCoshum blocked him with his own truck. Peshkov could not hear McCoshum and approached McCoshum's driver's side window. McCoshum pointed an antique pistol at Peshkov's face. After they exchanged phone numbers, Peshkov called the police.

---

[1] 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Law enforcement stopped McCoshum's truck and detained McCoshum and Ashford. Officer Brandon Riedel interviewed Ashford, and recounted the following in his report:

> While on shore Jessy reported that Nicholas left in the truck alone, and tried to find the driver/boat owner who took the fishing pole. Jessy stated he stayed behind and did not observe any interaction between Jessy [sic] and the party reporting the brandishing. Jessy stated Nicholas never mentioned a gun, and did not have a gun to his knowledge. Jessy did state that when Nicholas returned he gave him a dollar bill stating it was the boat owners phone number, and Jessy called it leaving a voicemail regarding the fishing pole taken.

PRP, Ex. 8. Ashford also showed Riedel his phone log, which indicated that Ashford had called Peshkov.

McCoshum had two previous convictions in Washington for second degree robbery and a conviction in Oregon for attempted kidnapping.

The State charged McCoshum with second degree assault with a deadly weapon and first degree unlawful possession of a firearm. The trial court appointed counsel for McCoshum.

*Pretrial*

During a pretrial hearing, the prosecutor discussed the use of McCoshum's prior robbery and attempted kidnapping convictions for impeachment purposes. Defense counsel did not object. The trial court noted that if McCoshum testified, the prior convictions could be used for impeachment under ER 609.

The prosecutor also stated that she intended to use McCoshum's previous robbery convictions as the basis for the unlawful possession of a firearm charge. The following exchange occurred:

> THE COURT: So based on the charging document is it your position that the State should be allowed to talk about the specific convictions as part of the elements of that particular charge, or that there should just be a reference to prior felony convictions that prohibit him from possessing a firearm?

[DEFENSE COUNSEL]: A reference to the specific convictions that prohibit him from possessing a firearm, the latter, Your Honor.
. . . .
[PROSECUTOR]: Your Honor, that's an issue that can be raised by Defense. They're not raising it in this case. So it seems like [a tactical decision].

THE COURT: . . . If it's not raised otherwise, I'll assume that that's the specific approach that the Defense wants to take is to have those specific charges and dates identified to the jury.

Rep. of Proc. (RP) at 17-18.

At a hearing on the day of trial, the State proposed exhibits of McCoshum's previous criminal judgments and sentences as substantive evidence of guilt. McCoshum's counsel did not object to the judgments being entered into evidence, but asked the trial court to remove the criminal history from them.

The trial court admitted McCoshum's previous criminal judgments as evidence at trial. Two Washington judgments showed convictions for robbery and an Oregon judgment showed a conviction for second degree kidnapping. The court removed the list of criminal history that usually is appended to the judgments. But the court did not redact statements in the two Washington judgments that stated, "See Attached Criminal History." PRP, Ex. 4 at 2; PRP, Ex. 5 at 2. The Oregon judgment also stated that charges of interfering with an officer and harassment were dismissed. The two Washington judgments stated, "You must immediately surrender any concealed pistol license and you may not own, use or possess any firearm unless your right to do so is restored by a court of record." *See* PRP, Ex. 4 at 10.

*Trial*

At trial, Peshkov testified as stated above that McCoshum pointed a gun at his face. He also stated that McCoshum called him multiple times after the incident and left a voicemail on his phone.

Officer Corey Hogg testified that he interviewed McCoshum after he was detained. When Hogg asked about a firearm, McCoshum denied that there was a firearm. McCoshum later said that he did not assault anyone and his gun was not even loaded.

After obtaining a search warrant, Hogg located a backpack in McCoshum's truck that contained a .44 caliber black powder handgun, .44 caliber ball rounds, a canister of black powder, percussion caps, and a plastic bottle of sealant lubricant. Hogg testified that McCoshum's pistol appeared to be a functional gun that could load ammunition and was fired with gunpowder.

McCoshum testified that he saw Peshkov put McCoshum's fishing pole in his boat and asked him for reimbursement if he did not have the pole. McCoshum stated that he did not threaten Peshkov or put the pistol in Peshkov's face. McCoshum testified that he did not contact Peshkov after the incident.

The trial court gave a jury instruction on McCoshum's previous criminal history. Instruction 7 stated,

> You may consider evidence that the defendant has been convicted of a crime only in deciding what weight or credibility to give to the defendant's testimony and whether the state has established the second element of Count 2 – Unlawful Possession of a Firearm in the First Degree. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

Clerk's Papers at 21.

> During closing argument, the prosecutor argued,

> What [Peshkov] did next he did because he was afraid. He provided his phone number and his name, so the defendant could contact him because he was trying to deescalate the situation because he was trying to get out of there because he was afraid.

5

> Eventually the defendant is satisfied that he has contact information and he has a way to get a hold of [Peshkov], so he leaves. But he calls him on his phone, and he leaves a voicemail. He leaves multiple voicemails in fact.

RP at 280-81.

*Verdict and Appeal*

The jury found McCoshum guilty of second degree assault with a deadly weapon and first degree unlawful possession of a firearm. This court affirmed McCoshum's convictions. *State v. McCoshum*, No. 57561-2-II (Wash Ct. App. Apr. 16, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2057561-2-II%20Unpublished%20Opinion.pdf. But the court reversed the trial court's sentence because McCoshum's defense counsel provided ineffective assistance of counsel at sentencing by failing to object to the comparability of his Oregon conviction in the calculation of his offender score. *Id.*, slip op. at 17-21.

*PRP Evidence*

In response to a public record request from McCoshum's postconviction counsel, the Vancouver Police Department produced a report from the federal Bureau of Alcohol, Tobacco, and Firearms (ATF). The report indicated that in July 2021 when the incident occurred, law enforcement ran a search on McCoshum's pistol. The report stated that "the weapon described in this report is not a firearm as defined by federal law, and is outside of the ATF regulations regarding recordkeeping and licensing." PRP, Ex. 12. A declaration from McCoshum's postconviction counsel states that he reviewed the discovery from the trial court and the ATF report was not disclosed to the defense.

In a declaration supporting his PRP, McCoshum states that his defense counsel did not share notes from interviews with witnesses. McCoshum's declaration also states that he believed

he was "entitled to possess an antique black powder firearm" and that he "legally purchased" it. PRP, Ex. 11, at 2. McCoshum states that his defense counsel did not prepare him for his direct or cross examination at trial. McCoshum's declaration also states, "During the trial, I told [defense counsel] that I did not call Mr. Peshkov, like the prosecutor portrayed it, but [defense counsel] did not attempt to challenge that I did call him." PRP, Ex. 11, at 2. McCoshum also provides a photograph of Ashford's phone log from Riedel that shows Ashford called Peshkov, not McCoshum.

McCoshum subsequently filed this timely PRP.

ANALYSIS

A.    PRP PRINCIPLES

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018). Establishing "actual and substantial prejudice" means that the petitioner must establish that if the alleged error had not occurred, the outcome more likely than not would have been different. *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019).

RAP 16.7(a)(2) requires a petitioner to specifically identify the evidence available to support the factual allegations in the PRP. *In re Pers. Restraint of Wolf*, 196 Wn. App. 496, 503, 384 P.3d 591 (2016). Any factual allegations must be based on more than speculation and conjecture. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013). The petitioner must show that they have competent, admissible evidence to establish facts that would entitle them to relief. *Id.*

B.       RELEVANT STATUTES

RCW 9A.36.021(1)(c) states that a person is guilty of second degree assault if "under circumstances not amounting to assault in the first degree . . . [a]ssaults another with a deadly weapon." A deadly weapon includes a firearm. RCW 9A.04.110(6).

RCW 9.41.040(1)(a)(i) states that a person is guilty of first degree unlawful possession of a firearm "[i]f the person owns, accesses, has in the person's custody, control, or possession, or receives any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense." A firearm is "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." RCW 9.41.010(20). In *State v. Anderson*, the Supreme Court held that a conviction for second degree unlawful possession of a firearm requires the State to prove actual knowledge of possession of a firearm. 141 Wn.2d 357, 359, 365-67, 5 P.3d 1247 (2000).

A serious offense includes any felony crime of violence. RCW 9.41.010(42)(a). Any class A felony, second degree robbery, and second degree kidnapping are serious offenses. RCW 9.41.010(7)(a).

C.       *BRADY* VIOLATION

McCoshum argues that the State withheld favorable evidence of the ATF report that his antique pistol was not considered a firearm under federal law, which violated his right to due process under *Brady*. We disagree.

1.    Legal Principles

Under *Brady* and its progeny, the State must provide the defense with all potentially exculpatory evidence or evidence that could be used as impeachment evidence. *State v. Mullen*, 171 Wn.2d 881, 894, 259 P.3d 158 (2011). The due process clause in article I, section 3 of the

Washington Constitution extends the same protection. *State v. Armstrong*, 188 Wn.2d 333, 344, 394 P.3d 373 (2017).

The defendant bears the burden of proving three elements of a successful *Brady* claim: (1) the evidence at issue must be favorable to the defendant, either as exculpatory or impeachment evidence; (2) the State must have withheld the evidence; and (3) the evidence must be material to the defense. *State v. Davila*, 184 Wn.2d 55, 69, 357 P.3d 636 (2015).

Evidence is material if there is a reasonable probability that, if it had been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 73. A defendant need not demonstrate that he would be acquitted if suppressed evidence had been disclosed. *Id.* Under the reasonable probability standard, the defendant must show only that the State's suppression undermines confidence in the trial's outcome. *Id.*

2. Analysis

The State concedes that the second *Brady* requirement is met because the police were in possession of the ATF report and it was not disclosed to the defense. But we conclude that McCoshum cannot show that the ATF report was favorable as exculpatory or impeachment evidence.

The State argues that the ATF report is inadmissible hearsay. We agree. Hearsay is an out of court statement offered for the truth of the matter asserted. ER 801(c). And hearsay evidence is inadmissible unless a hearsay exception applies. ER 802. Here, McCoshum's argument relies on the ATF report's statement that the antique pistol is not a firearm under federal law. Therefore, the ATF report would be offered for the truth of the report's contents. Because the ATF report is an out of court statement offered for the truth of its contents, it is

hearsay and would be inadmissible. ER 802. Therefore, it could not be used as exculpatory evidence.

Assuming that ATF report would be admissible at trial, McCoshum argues that the ATF report would have provided exculpatory evidence that he did not have actual knowledge that he possessed a firearm. McCoshum's argument is unpersuasive. Under RCW 9.41.040(2), the State was required to prove that McCoshum had knowledge that he possessed a firearm. *Anderson*, 141 Wn.2d at 359, 365-67. The definition of a firearm is provided by Washington law. RCW 9.41.010(20). The ATF report states that the pistol was not a firearm under federal law, which has a much narrower definition. *See* 18 U.S.C. § 921(a)(3). But whether the pistol is a firearm under federal law has no bearing on whether the pistol is a firearm under Washington law. And McCoshum's declaration to his PRP does not state that he relied on the ATF report when possessing the pistol. Therefore, the ATF report would not have mitigated any knowledge that McCoshum possessed a firearm under Washington law, and would not have been exculpatory evidence.

Accordingly, we hold that McCoshum fails to establish a *Brady* violation.[2]

D.      INEFFECTIVE ASSISTANCE OF COUNSEL

McCoshum argues that he received ineffective assistance of counsel because his defense counsel (1) failed to present the defense of lawful use of force in defense of his property and failed to challenge the knowledge element of unlawful possession of a firearm, (2) failed to interview or call Ashford and other witnesses at trial, and (3) failed to redact portions of the judgments admitted to prove McCoshum's previous criminal history. We disagree.

---

[2] Because of this holding, we do not address whether withholding the ATF report was material to McCoshum's defense.

1.    Legal Principles

Ineffective assistance of counsel is a constitutional error, arising from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). To prevail on an ineffective assistance claim, the defendant must show that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Id.*

Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. Vasquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). We apply a strong presumption that defense counsel's performance was reasonable. *Bertrand*, 3 Wn.3d at 128. To rebut that presumption, a defendant bears the burden of establishing the absence of any legitimate strategic or tactical reason explaining counsel's conduct. *Vasquez*, 198 Wn.2d at 248. "[T]he defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

Prejudice exists if there is a reasonable probability that the result of the trial would have been different but for defense counsel's deficient performance. *Bertrand*, 3 Wn.3d at 129. This standard is lower than the preponderance of the evidence standard. *Id.* But the defendant must show more than that a different outcome is conceivable. *Id.* A petitioner who successfully demonstrates prejudice in an ineffective assistance of counsel claim necessarily has shown actual and substantial prejudice sufficient to obtain collateral relief. *State v. K.A.B.*, 14 Wn. App. 2d 677, 707-08, 475 P.3d 216 (2020).

2.    Failure to Investigate Potential Defenses

11

McCoshum argues that his defense counsel provided ineffective assistance by failing to investigate and argue a defense of lawful use of force in defense of his property and challenge the knowledge element of unlawful possession of firearm. We disagree.

Failure to investigate evidence, at least when coupled with other defects, can amount to ineffective assistance of counsel. *State v. A.N.J.*, 168 Wn.2d 91, 110, 225 P.3d 956 (2010); *see also In re Pers. Restraint of Brett*, 142 Wn.2d 868, 882, 16 P.3d 601 (2001). "Defense counsel must, 'at a minimum, *conduct a reasonable investigation* enabling [counsel] to make informed decisions about how best to represent [the] client.' " *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 721, 101 P.3d 1 (2004) (alterations in original) (quoting *Brett*, 142 Wn.2d at 873). "This includes investigating all reasonable lines of defense, especially 'the defendant's most important defense.' " *Davis*, 152 Wn.2d at 721 (quoting *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001)).

First, McCoshum argues that his defense counsel was ineffective for failing to raise the affirmative defense of defense of property. RCW 9A.16.020(3) states that the use of force toward another person is not unlawful "[w]henever used by a party about to be injured . . . in preventing or attempting to prevent . . . malicious interference with real or personal property lawfully in his or her possession, in case the force is not more than is necessary." However, "[t]he plain language of RCW 9A.16.020(3) establishes that an owner of property cannot use force to defend that property after the interference with the property has been completed." *State v. Yelovich*, 1 Wn. App. 2d 38, 44, 403 P.3d 967 (2017), *affirmed on other grounds*, 191 Wn.2d 774, 426 P.3d 723 (2018).

Here, an argument that McCoshum pointed his gun at Peshkov's face to prevent Peshkov from taking the fishing pole would have been extremely weak. It is unclear that Peshkov even

possessed the fishing pole, and by the time McCoshum pointed the gun any interference with the fishing pole had been completed. In addition, asserting this weak defense would have been inconsistent with McCoshum's claim that he did not point a gun at Peshkov. In the context of the record, we conclude that it is conceivable that defense counsel made a strategic decision to not raise the defense of property was not deficient performance.

Second, McCoshum argues that his trial counsel was ineffective for failing to present evidence that McCoshum believed his pistol was not a firearm based on federal law. But as discussed above, the State was required to prove only that the pistol was a firearm under Washington law, not federal law. At trial, Officer Hogg testified that the pistol used gunpowder and that McCoshum had the items necessary to use the pistol as a weapon. Therefore, whether McCoshum thought that the pistol was not a firearm under federal law did not mitigate his knowledge that he possessed what Washington law considered a firearm. We conclude that his defense counsel was not unreasonable for declining to address this issue.

Therefore, we hold that McCoshum's ineffective assistance of counsel claim based on trial counsel's failure to raise particular defenses fails.

3. Failure to Interview or Call Witnesses

McCoshum argues that his defense counsel provided ineffective assistance by failing to interview or call witnesses that he claims possessed favorable evidence. We disagree.

"[T]he decision 'to call a witness is a matter of legitimate trial tactics that presumptively does not support a claim of ineffective assistance of counsel.' " *In re Pers. Restraint of Quintero*, 29 Wn. App. 2d 254, 286, 541 P.3d 1007 (quoting *State v. Davis*, 174 Wn. App. 623, 649, 300 P.3d 465 (2013)), *review denied*, 3 Wn.3d 1018 (2024). " 'A defendant can overcome this

presumption by showing that counsel failed to adequately investigate or prepare for trial.' " *Id.* (quoting *Davis*, 174 Wn. App. at 639).

First, McCoshum argues that his defense counsel was ineffective because he did not call Ashford as a witness. McCoshum states that Ashford's testimony would have refuted Peshkov's testimony that McCoshum pointed his pistol at Peshkov and that McCoshum called Peshkov.

Even assuming that defense counsel was deficient in not interviewing or calling Ashford as a witness, McCoshum cannot show prejudice. In his interview with Officer Riedel, Ashford said that he stayed behind and did not observe the incident between McCoshum and Peshkov. Therefore, Ashford could not have refuted Peshkov's testimony that McCoshum pointed a gun at his face. Ashford did say that McCoshum never mentioned a gun and that McCoshum did not have a gun to his knowledge. But the undisputed fact was that law enforcement found a gun in McCoshum's truck.

Ashford could have provided testimony that he called Peshkov, which would have contradicted Peshkov's testimony that McCoshum called him. But who called Peshkov was a collateral issue; it had nothing to do with whether McCoshum pointed a gun in Peshkov's face or unlawfully possessed a firearm. And just because Ashford called Peshkov does not foreclose the possibility that McCoshum also called him.

We conclude that there is not a reasonable probability that the result of the trial would have been different if Ashford had testified.

Second, McCoshum argues that defense counsel should have called Officer Riedel as a trial witness to discuss his interview with Ashford. But any such testimony arguably would have constituted inadmissible hearsay. And as discussed above, the fact that Ashford said that he

called Peshkov is not particularly significant. We conclude that there is not a reasonable probability that the result of the trial would have been different if Ashford had testified.

Third, McCoshum argues that defense counsel was deficient in failing to interview or call as a trial witness Peshkov's friend, Artem Pohrybniak. But there is no evidence regarding what Pohrybniak would have said about the incident. Therefore, McCoshum cannot show prejudice.

Accordingly, we hold that McCoshum's ineffective assistance of counsel claim based on the failure to interview or call witnesses fails.

### 4. Failure to Redact Judgments

McCoshum argues that his defense counsel was ineffective because he failed to redact his criminal history from his previous criminal judgments that were admitted into evidence.[3] We disagree.

McCoshum argues that defense counsel should have requested redaction of language in the two Washington judgments that stated, "See Attached Criminal History." PRP, Ex. 4 at 2; PRP, Ex. 5 at 2. Those judgments also stated that McCoshum was disqualified from possessing a firearm. Finally, the Oregon judgment stated that other charges had been dismissed.

Even though the criminal history was not attached to the Washington judgments, McCoshum argues that this language told the jury that there was other criminal history. But the jury already knew that McCoshum had three prior convictions. Even if the jury noticed the language about criminal history, the fact that he may have had other unidentified convictions

---

[3] Defense counsel could have stipulated to the existence of the prior convictions to avoid the prejudicial effect of the details of those convictions. *See State v. Roswell*, 165 Wn.2d 186, 195, 196 P.3d 705 (2008). But the jury would have learned of those details anyway because the prosecutor impeached McCoshum with those convictions under ER 609.

would not have affected the jury's verdict. And it is unclear why the language in the Oregon judgment stating that three charges had been dismissed would have made any difference.

McCoshum argues that the language stating that he was prohibited from possessing a firearm encroached on the ultimate issue for his unlawful possession of a firearm charge. But the fact that McCoshum was prohibited from possessing a firearm because of his prior convictions was not a disputed issue at trial.

Finally, jury instruction number 7 gave the jury explicit instructions to not use the criminal judgments for any purpose other than to evaluate McCoshum's credibility and to determine whether he had a previous felony conviction. We presume that jurors follow jury instructions. *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 172, 410 P.3d 1142 (2018).

Even assuming that McCoshum's representation was deficient for failing to redact the portion of the criminal judgments, McCoshum cannot show prejudice. Accordingly, we hold that McCoshum's ineffective assistance of counsel claim based on the failure to fully redact his previous criminal judgments fails.

E.    PROSECUTORIAL MISCONDUCT

McCoshum argues that the State committed prosecutorial misconduct by eliciting false testimony from Peshkov regarding the phone calls he received. We disagree.

To establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the record and all of the circumstances of the trial. *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020). The State may not knowingly use perjured testimony. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 937, 952 P.2d 116 (1998).

16

McCoshum fails to establish that the State knowingly elicited false testimony. The prosecutor elicited testimony from Peshkov that McCoshum called him multiple times. McCoshum denied that he called Peshkov, and the State had a phone log from Ashford showing that he called Peshkov.

But this is nothing more than conflicting evidence. We cannot determine whether Peshkov or McCoshum was telling the truth – that was for the jury to decide. Even though there was evidence that Ashford called Peshkov, McCoshum could have followed up with other phone calls. The prosecutor was not obligated to believe McCoshum over Peshkov. Therefore, although the circumstances surrounding the calls had conflicting facts, the evidence is not sufficient to show that the State knowingly elicited false testimony from Peshkov.

Accordingly, we hold that the prosecutor did not commit misconduct.

CONCLUSION

We deny McCoshum's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

GLASGOW, J.

17